UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL WILLIAM BROWN,

    Plaintiff,

    v.                                     Case No. 22-cv-0202-bhl

KAMRY PALMER, et al.,

    Defendants.

---

## DECISION AND ORDER

---

Plaintiff Michael William Brown, who is representing himself, is proceeding on a claim that Defendants Kamry Palmer and Austin Pecard's response to his complaints of chest pain was objectively unreasonable. *See* Dkt. No. 16 at 3. On September 6, 2022, Defendants filed a motion for summary judgment based on Brown's failure to exhaust the administrative remedies prior to bringing this lawsuit. Dkt. No. 25. For the following reasons, the Court will deny the motion.

## BACKGROUND

The events at issue in this case occurred on the night of December 21, 2021, continuing into the morning of December 22, 2021. At that time, Brown was incarcerated at the Milwaukee County Jail. Brown was transferred to the Milwaukee County House of Correction (HOC) on January 16, 2022. Although both the jail and HOC are associated with Milwaukee County, they are separate entities with separate staff, and they maintain separate electronic databases for the submission of grievances. Brown explains that inmates at one entity are not able to access information relating to grievances they may have filed at the other entity. Dkt. No. 36 at ¶¶1, 4, 5-6, 35, 39.

Brown concedes that he was aware of the jail's grievance policy, which is set forth as follows in the jail handbook:

Grievance procedure:

1. Complete a written grievance form using the Aramark kiosk. If you need help, ask the officer or request the assistance of an advocate. The completed grievance will be electronically submitted.

2. Should the kiosk not be in service, you must ask your dorm officer for a paper form. Paper forms shall be completed fully and placed in the designated lock box.

3. The grievance will be reviewed and answered by a Jail Representative within ten (10) working days of receiving the grievance.

4. If you are dissatisfied with the result you may appeal the decision by writing supporting documentation including full names of witnesses. You must appeal the grievance decision within three (3) days of receiving it. The Lieutenant will review and rule on your appeal.

5. Once the Lieutenant has ruled, and more evidence is available you may make one final appeal to the Jail Commander or his/her designee. This appeal must include all previous writings and supporting testimony and evidence and the new-found information/evidence. This decision/action is final. This appeal must be made within three (3) days of receipt of the Lieutenant's decision.

6. A maximum of two (2) grievances shall be accepted each week by the agency, per inmate, pertaining to the same issue.

Dkt. No. 36 at ¶39; Dkt. No. 28-1 at 3.

Brown submitted two grievances about the incident at issue, Grievance No. 53448, submitted on December 22, 2021, and Grievance No. 54927, submitted on January 5, 2022. On December 27, 2021, a jail official responded to the *first* grievance, stating "No officer was named in this complaint" and then closed the grievance. On January 5, 2022, Brown appealed the closure of the grievance, stating, "Officer Involved were k. Gipson and john Doe." On January 14, 2022, in response to Brown's *second* grievance, a jail official responded, "I will address this matter with the people assigned to the floor control on that shift." A few days later, on January 17, 2022, the day after Brown was transferred to the HOC, a jail official responded to Brown's appeal of his *first* grievance, stating, "I will

2

speak to those officers about the situation," and then closed the appeal. Dkt. No. 36 at ¶¶41-46, 48.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Defendants assert that they are entitled to summary judgment because Brown did not exhaust the administrative remedies before he filed this lawsuit. The PLRA provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v.*

3

*Nussle*, 534 U.S. 516, 532 (2002). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects inmates to adhere to the specific procedures and deadlines established by the institution's policy. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *see also Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (citation omitted).

That said, inmates are expected to exhaust only those administrative remedies that are available to them. Because exhaustion is an affirmative defense, Defendants must prove that the administrative remedies were available. *Dole*, 438 F.3d at 809. An administrative remedy may be unavailable when prison officials provide an inmate with erroneous information or otherwise use affirmative misconduct to prevent him from exhausting. *Id*.

Defendants note that, while Brown filed two grievances regarding the events at issue in this case, he did not fully appeal either response to the grievances as required by the jail's grievance policy. Defendants argue that this action must therefore be dismissed because Brown did not complete every step in the grievance process. Brown asserts that his failure to complete the grievance process is excused because Defendants did not render a decision on his grievances that could be appealed and, even if they had, the jail's grievance procedures were unavailable to him once he transferred to the HOC. The Court agrees with Brown that Defendants have failed to prove that the administrative remedies were available to Brown.

The first step of the jail's grievance policy instructs inmates to "[c]omplete a written grievance in the Kiosk." There is not dispute that Brown took this step by submitting two grievances through the kiosk. There is also not dispute that the second step is not relevant to Brown. The third step informs inmates that "[t]he grievance will be reviewed and answered by a Jail Representative within ten (10) working days of receiving the grievance." This is where the confusion first arises. Rather than answering Brown's first grievance, the jail official closed the grievance after noting that Brown hadn't named the officers involved, even though the grievance policy does not include such a requirement. Brown, who was dissatisfied with that response, filed

4

an appeal providing the names of the officers. Although he did so more than three days after the closure of his grievance as the policy requires, the jail official ignored this potential procedural defect and responded to the appeal on January 17, 2022.

The jail official's response to Brown's appeal is insufficient for two reasons. First, Brown had been transferred to the HOC the day before. Brown explains that the kiosk systems at the jail and the HOC are separate, so he was unable to access the jail official's response. Further, Defendants offer no evidence that anyone working for the jail delivered the response to Brown. Nor do Defendants explain how Brown was to appeal a decision he never received, and nothing in the jail's grievance policy informs inmates what they are required to do in the event they are transferred out of the jail before the grievance process is complete. It has long been settled that "[p]risoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about." *King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015) (overruled on other grounds).

The jail official's response to Brown's appeal was also deficient because, contrary to step 4 of the jail's grievance policy, the jail official did not "rule" on Brown's appeal. Instead, the jail official merely informed Brown that he or she would speak to the officers Brown had identified. This suggests an intention to gather additional information, not that the jail official was ruling on the appeal. Step 5 states that an inmate may make a final appeal "[o]nce the Lieutenant has ruled," but the policy is silent on what an inmate must do if his appeal is closed without a ruling. Defendants argue that Brown was required to strictly comply with the grievance procedures while simultaneously demanding that he read the procedures broadly to require steps not specifically stated. "The Prison Litigation Reform Act was not meant to impose the rule of 'heads we win, tails you lose' on prisoner suits." *King v. McCarty*, 781 F.3d at 896. Brown did as much as the jail's grievance policy explicitly required.

Defendants focus on the fact that Brown received a response to his *second* grievance a few days before he was transferred to the HOC, but "prisoners need not file multiple, successive grievances raising the same issue." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Brown was required to exhaust *available* administrative remedies, and that remedy was unavailable because jail officials failed to respond per the policy to his *first* grievance. Further, as already highlighted, the jail official's response that he/she would talk to the officers involved is not a decision on the grievance, and the policy does not inform inmates what to do when their grievance is closed without a decision or what to do if they are transferred out of the jail before the grievance process is complete. On this record, the Court finds that the administrative remedies were unavailable to Brown.

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment on exhaustion grounds (Dkt. No. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that the parties must respond to any outstanding discovery requests within thirty days of entry of this decision.

**IT IS FURTHER ORDERED** that the parties must serve their discovery requests by a date sufficiently early so that discovery is completed no later than **April 7, 2023,** (that means that, consistent with Fed. R. Civ. P. 33 and 34, the parties must serve their requests at least **thirty** days *before* the deadline to allow the opposing party sufficient time under the rules to respond by the deadline).

**IT IS FURTHER ORDERED** that the parties may file motions for summary judgment on the merits, together with supporting materials, no later than **May 8, 2023**.

Dated at Milwaukee, Wisconsin on February 3, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge