UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL WILLIAM BROWN,

        Plaintiff,

        v.                                               Case No. 22-cv-0202-bhl

KAMRY PALMER et al.,

        Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING THIS CASE

      Plaintiff Michael William Brown, an inmate at the Racine Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on a Fourteenth Amendment claim based on allegations that Defendants Kamry Palmer and Austin Pecard's failure to immediately notify medical staff of his complaints of chest pain was objectively unreasonable. On May 8, 2023, Defendants filed a summary judgment motion. For the reasons explained below, the Court will grant the motion and dismiss this case.

### BACKGROUND

      At the relevant time, Brown was a pretrial detainee at the Milwaukee County Jail, where Palmer and Pecard worked as corrections officers. Prior to Brown's incarceration, he had been diagnosed with fibrillation, obesity, congestive heart failure, diabetes, sleep apnea, hypertension, and high cholesterol. In addition to daily insulin injections and taking various other prescribed medications, Brown had a surgically implanted internal defibrillator. As a result of his medical needs, Brown had contact with contracted medical staff during med pass, which occurred twice

per day. He also received testing, including electrocardiograms (EKG) when medical staff deemed it necessary. Dkt. No. 55 at ¶¶1-10.

Inmates at the jail are able to request medical care by submitting a non-emergency health care request form, which medical staff respond to, or they can press the emergency call button in their cells, which correctional staff respond to. Corrections officers do not have control over inmates' medical appointments or medical treatment, but they can contact master control when it appears that an inmate is having a medical emergency, including showing signs of serious injury or sudden illness of a nature that could result in death or serious harm. Master control then broadcasts over the radio that there is a medical emergency; medical staff monitors those transmissions and responds to the emergency. Dkt. No. 55 at ¶¶11-18.

According to Brown, on December 21, 2021, at about 9 p.m. and again at 9:30 p.m., he reported to nursing staff that he was experiencing sciatic nerve pain. Nurses told him to fill out a non-emergency healthcare request form. Brown asserts that, at about 9:50 p.m., he started to experience severe pain in his chest. He states that the pressure continued to increase, so at 10:20 p.m., he pressed the emergency call button in his cell, but no one responded. About thirteen minutes later, Palmer made a wellness check round. Video footage shows her briefly stopping at Brown's cell. According to Brown, he tried to tell her about his chest pain, but she merely told him, "I'm doing a round," and walked away. Dkt. No. 59 at ¶¶4-11.

Brown asserts that he again pressed his emergency call button at about 11:00 p.m. Video footage shows Palmer again conducting rounds at 11:14 p.m., at which time she pauses briefly at Brown's door from a few feet away. Brown asserts that he was informing her of his chest pain and noting that no one had responded to him pressing his emergency call button. Palmer again walks away from Brown's cell. According to video footage, at 11:35 p.m., Pecard conducts a

2

round, at which time he pauses at Brown's cell for several seconds. About fifteen minutes later, Pecard returns to Brown's cell, opens the door, and hands him a diabetic snack bag. Shortly thereafter, at 12:04 a.m., Brown's cell light is turned off and remains off for the night. Dkt. No. 59 at ¶¶13-16; Dkt. No. 55 at ¶¶30-31.

A little after 6 a.m. on December 22, 2021, a nurse gives Brown a blood sugar test and administers insulin. Brown asserts that he told her about his severe chest pains. Video footage of the interaction shows Brown walking calmly to the medication cart and self-administering his morning insulin shot without incident. The nurse informed Brown that she would let health services know about his complaints. About an hour and a half later, at 7:36 a.m., an officer speaks to Brown, and video shows Brown rising unassisted, exiting his cell, and walking across the open area to the all-purpose room where he undergoes an EKG. Brown returns to his cell unassisted about ten minutes later. Dkt. No. 55 at ¶¶32-33; Dkt. No. 59 at ¶17-18.

About an hour after the EKG, at 8:23 a.m., medical staff and EMTs enter the unit. Video shows Brown walking with his cane from his cell across the open area of the unit. He hands his cane to someone standing nearby and gets onto the gurney unassisted. Brown is secured to the gurney, and he is transported to the hospital. At the hospital, it is determined that jail medical staff ordered a transport to the hospital based on a misreading of Brown's EKG results. Medical staff believed that Brown's defibrillator was discharging, but it never discharged or malfunctioned. Instead, Brown was diagnosed with Covid-19, and it was determined that that was the cause of his chest pain and discomfort. Brown received an intravenous drip and saline drops and was returned to the jail later that day. Dkt. No. 55 at ¶¶34, 41-44; Dkt. No. 59 at ¶¶20-21.

3

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Brown was a pretrial detainee at the relevant time, so his claim arises under the Fourteenth Amendment. *See Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019); *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). For his claim to survive summary judgment, Brown needed evidence that his chest pain was a serious medical condition and that Defendants' response to that condition was objectively unreasonable. *Williams*, 937 F.3d at 942. "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively . . . whether the response was reasonable."

4

*McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018). This standard does not reach negligent conduct, so Brown must show that Defendants acted "with purposeful, knowing, or reckless disregard of the consequences" of their actions. *Miranda*, 900 F.3d at 354.

Given Brown's serious underlying health conditions, which include two prior heart attacks, a reasonable jury could conclude that Defendants' failure to immediately contact health services after he pressed his emergency call button and complained of severe chest pains was objectively unreasonable. Nevertheless, Defendants are entitled to summary judgment for a different reason; the record shows at most a short, temporary delay in providing Brown treatment. Such delays, unlike complete denials of treatment, do not, without more, violate the Fourteenth Amendment.

Reviewing the facts in the most favorable light to Brown, Defendants failed to contact health services immediately, delaying Brown's receipt of medical treatment. According to Brown, about eight hours after he first reported his chest pains, he communicated his concerns to the nurse distributing medication. She reported his symptoms to health services, and it was decided that an EKG was necessary. Thus, a jury could reasonably conclude that, had Defendants reported Brown's complaints when he first raised them, health services would have ordered an EKG about eight hours earlier than it did.

"In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007). In other words, the plaintiff "must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Id.* at 715. Brown offers no such evidence. In his amended complaint, Brown asserted that, "after performing the E.K.G. test, the results were taken to [the] health center and the fire [department] and rescue squad was

5

dispatched because plaintiff['s] [defibrillator] was discharging and plaintiff was taken by ambulance to Mt. S[ai]ni Medical Center . . . ." Dkt. No. 13 at 3. But, following discovery, the record now confirms that, once at the hospital, it was determined that jail medical staff had misread the EKG results and that Brown's defibrillator never discharged and never malfunctioned. In other words, because the EKG results were unremarkable, it was of no consequence that the test occurred eight hours later than it might have occurred had Defendants immediately communicated Brown's complaints to health services. Brown asserts that the hospital discovered he had Covid-19, and as a result he was given fluids. But, setting aside the fact that had jail staff properly read the EKG results he likely would not have been sent to the hospital, Brown offers no evidence suggesting that he was harmed by the relatively short delay in receiving fluids. Instead, the evidence shows that he was experiencing chest pains because he had Covid-19, an infection that was not resolved by his visit to the hospital. Brown therefore fails to show that the delay rather than his underlying condition harmed him.

In short, Brown's "claim fails on the basic proposition that he has sued for damages under § 1983 and alleged a constitutional tort . . . without then developing evidence of a recoverable injury." *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). As has long been held, "[i]n order to succeed in a § 1983 suit, a plaintiff must establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages." *Roe v. Elyea*, 637 F.3d 843, 864 (7th Cir. 2011) (citations omitted, emphasis in original). Because Brown offers no evidence that Defendants' failure to immediately contact health services injured him, Defendants are entitled to summary judgment.

6

Case 2:22-cv-00202-BHL   Filed 08/01/23   Page 6 of 7   Document 62

# CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's summary judgment motion (Dkt. No. 44) is **GRANTED** and this case is **DISMISSED**. The Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin on August 1, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.